UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WILLIE GOODMAN,

                Petitioner,

vs.

ROBERT AYERS, JR., Warden,

                Respondent.

Case No. 1:00-cv-05296-JKS-HC

MEMORANDUM DECISION

## I.  BACKGROUND

Willie Goodman, appearing *pro se*, has filed a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254.  After jury trial Petitioner was convicted of acquiring access card account information with an intent to defraud (CAL. PEN. CODE § 484(e)(e), Counts I and VI), acquiring an access card with intent to defraud (CAL. PEN. CODE § 484(e)(c), Counts II and III), petit theft with a prior conviction (CAL. PEN. CODE § 666, Count IV), receiving stolen property (CAL. PEN. CODE § 496(a), Count V), grand theft through use of an access card (CAL. PEN. CODE § 484(g), Count VII), and theft of lost property containing the identification of the true owner (CAL. PEN. CODE § 485, a misdemeanor, Count IX).  The jury was unable to reach a verdict on a count of possession of heroin (Count VIII).  The court found as true that Petitioner had served six prior prison terms (CAL. PEN. CODE § 667.5(b)) and had suffered two prior serious felony convictions for purposes of California's "Three Strikes Law" (Cal. Pen. Code §§ 667(c) through (I); 1171.12(a) through (e)).  Petitioner was sentenced under the California Three Strikes Law to 80 years to life (three consecutive sentences of 25 years to life for the convictions on Counts IV, VI, and VII, plus five consecutive one-year terms for the prison term enhancements).

Petitioner appealed.  The California Court of Appeals in an unpublished written decision reversed the convictions as to three counts (II, V, and VI), reduced the sentence to 55 years to life (eliminating the consecutive 25-year to life sentence imposed on Count VI) and remanded to

the trial court with instructions to prepare an amended abstract of judgment.  Petitioner's petition for further direct review by the California Supreme Court was summarily denied without opinion on February 17, 1999.  Petitioner's conviction became final 90 days later on May 19, 1999 when his time for seeking a writ of *certiorari* expired.  Petitioner filed *habeas corpus* petitions in the California Superior Court, which denied the petition in a written decision without an evidentiary hearing; the California Court of Appeal, which summarily denied the petition without opinion; and the California Supreme Court, which the California Supreme Court denied without opinion on January 25, 2000.[1]  Petitioner timely filed this petition February 24, 2000.  In his answer, Respondent admits that Petitioner has "exhausted all claims to the extent interpreted by Respondent [in the answer]."  Petitioner filed his traverse.  On December 21, 2001, Petitioner also filed a "Supplement to Writ of Habeas Corpus" to which Respondent filed his opposition. Subsequently on May 6, 2003, Petitioner filed a second "Supplement and Stay Request" to which Respondent filed an opposition.

## II.  FACTS

The facts in this case are as follows.[2]

Saundrah Ross lived in a five-bedroom house on Morley Street in Simi Valley.  She was separated from her husband, Don Ross, and was unaware of his whereabouts.  After their separation, she retained several of his credit cards but canceled the accounts. She kept the credit cards in various rooms of the house. Ms. Ross purchased a gray, zippered business planner, and intended to keep her husband's credit cards and other documents inside it. Ms. Ross closed their joint checking account at Bank of America, and opened a new account for herself at the same bank. She kept both sets of checkbooks in a bedroom drawer.

In December 1995, Ms. Ross received a phone call from appellant Willie Goodman. Appellant stated that he was calling from the airport in either Las Vegas or Reno and meant to call a friend, but he had misdialed and reached Ms. Ross by mistake.  Ms. Ross had never met appellant and did not know him, but they conversed over the phone and became friends.

---

[1] The record before this court includes the *habeas corpus* petition filed in the California Supreme Court and the summary denial thereof, the summary denial of the petition to the California Court of Appeal and the decision of the California Superior Court.  The *habeas corpus* petitions filed in the California Superior Court and Court of Appeal are not included in the record before this court.

[2] Taken from the decision of the California Court of Appeal.

In the first week of January 1996, appellant moved into Ms. Ross's residence.  Ms. Ross allowed him to wear clothing which had belonged to her late son. She also allowed him to drive her Lincoln Continental and use her Shell credit card to refuel the vehicle. Appellant always returned the Shell credit card to her.  She never allowed him to drive her Corvette, and she never allowed him to use any of Don Ross's credit cards.

Shortly after appellant moved in, he noticed the gray business planner and asked Ms. Ross if he could use it. Ms. Ross did not believe she had used the planner yet, and told appellant he could use it. Ms. Ross left appellant alone in the house while she went to work during the day. Ms. Ross learned that appellant also used the name "Willie Walker."

On the morning of January 23, 1996, Ms. Ross and appellant argued because appellant asked to drive her Corvette. Ms. Ross asked appellant to leave her residence.  Appellant refused to leave because he did not have any money, and said he would leave if she gave him $50.  Ms. Ross agreed and promised to get the money from the bank.  Appellant packed his belongings, and Ms. Ross asked him to return some of her son's clothing and the gray business planner. Appellant returned the clothing but he kept the business planner and packed it with his things.

Appellant and Ms. Ross went to the bank and she gave him the money. Appellant wanted to stay with a friend in Los Angeles, and Ms. Ross agreed to drive him there in her Corvette because she wanted to meet his friend.  Ms. Ross realized she needed to refuel the vehicle for the trip and pulled into a Shell service station.  She started to look for her Shell credit card when appellant suddenly volunteered to pay for the gasoline with the cash she had just given him.  Ms. Ross agreed and gave him permission to drive the Corvette to Los Angeles.  She gave him the Corvette's pink slip and ownership papers, just for the purposes of the drive, in case they were stopped by the police.  Ms. Ross testified that she was frequently stopped by the police when she was driving the Corvette, and she wanted appellant to have the proper papers since he would be driving.  Appellant and Ms. Ross proceeded to Los Angeles and she met his friend. Appellant stayed in Los Angeles and Ms. Ross returned to Simi Valley later that day.

When Ms. Ross returned home that evening, she realized two checks were missing from the checkbook for her bank account.  She immediately contacted the bank and canceled the account on the same day and opened a new account.

### HomeBase purchases

Vincent Puget is a sales manager in charge of contractor commercial sales at the HomeBase store in Bakersfield.  On January 24, 1996, Mr. Puget received a telephone call from an individual identifying himself as "Donald Bocast."  "Mr. Bocast" needed several items for his construction crew working in the area, and

requested price information for large compressors. "Mr. Bocast" ordered five items: a large compressor, hammers, and a drill, for a total of $1,286.65. "Mr. Bocast" stated he had both a Discover card and a Mastercard, and asked Mr. Puget "to run one of the cards for him, and if there was no problems with the credit card going through, that he would send his man down to pick up the merchandise." Mr. Puget was not surprised by the credit card request because customers frequently use several credit cards for their businesses and might "max out" a particular account and need to use another account. Mr. Puget asked "Mr. Bocast" for an address and phone number. "Mr. Bocast" replied he was rather hard to reach on the phone, and asked Mr. Puget to mail the receipts to his office in Simi Valley. Mr. Puget repeatedly requested a phone number and "Mr. Bocast" finally complied.

"Mr. Bocast" gave Mr. Puget a Discover credit card number, and Mr. Puget checked the number with the company. The company verified the card was valid and approved the purchase of $1,286.65. Mr. Puget proceeded to ring up the purchase on the Discover credit card. "Mr. Bocast" asked Mr. Puget to have the merchandise ready for his employee to pick up. Mr. Puget asked for the employee's name and explained the employee would have to provide identification before the merchandise would be released. "Mr. Bocast" replied that his employee, Gary Johnson, would pick up the merchandise. Mr. Puget filled out an order form and sales and credit card receipts with the information given by "Mr. Bocast."

A few hours later, Gary Johnson arrived at Mr. Puget's work station and identified himself as an employee of "Donald Bocast" of "Borax Construction." Johnson was accompanied by another individual, subsequently identified as David Soto. Johnson was familiar with "Mr. Bocast's" order and presented identification. Soto asked if he could carry the smaller items to their truck. Mr. Puget agreed, and directed them to meet him in the lumber yard area where they could load the large compressor.

When Mr. Puget arrived at the loading area, he noticed Johnson and Soto were using a rental truck. Mr. Puget became suspicious because the transaction had been accomplished with a credit card and they were using a rental truck, and decided to write down the vehicle's license plate number. As Johnson loaded the compressor onto the truck, Mr. Puget noticed Soto standing approximately 20 feet away and speaking with an individual he subsequently identified as appellant Willie Goodman. Mr. Puget decided he needed to make another phone call because of his suspicions, and asked Mr. Johnson to wait. However, Mr. Puget's attention was distracted by other customers and Johnson and Soto left in the rental truck with the merchandise. Mr. Puget immediately informed his store's loss prevention officer about his suspicions, and they contacted the Bakersfield Police Department.

**The arrest**

On the afternoon of January 24, 1996, Officer Lisa Lerman responded to HomeBase and spoke with Mr. Puget, who provided her with the sales and credit card receipts.  Mr. Puget also provided descriptions of Johnson and Soto, and the license plate number of the rental truck.  Officer Lerman obtained the Discover credit card number and called the company.  She informed the credit card company of the suspicious circumstances and asked it to contact the cardholder.  Officer Lerman also called the phone number given by "Mr. Bocast."  A woman answered the phone and identified the location as a boarding house on Sumner Street in Bakersfield.

Several officers proceeded to the Sumner Street address and found a Ryder rental truck parked in front of the boarding house.  The rental truck's license plate number matched the license plate number of the rental truck driven by Johnson and Soto, as reported by Mr. Puget at HomeBase.  The officers entered the main door of the boarding house, and observed a pay telephone in the hallway with the same phone number given by "Mr. Bocast" to Mr. Puget.  The officers knocked on the individual rooms and spoke with the occupants in an attempt to locate Johnson and Soto.

Officer Lerman knocked on room No. 5 and contacted an individual who identified himself as Gary Johnson.  Two women were also in the room.  Officer Lerman testified that one of the hammers purchased from HomeBase was in the room, along with a narcotics syringe.  Officer Lerman also noticed a gray, zippered business planner on the floor near Johnson.  Officer Lerman examined the business planner and discovered three bindles of tar heroin inside the front cover.  A pat-down search of Johnson revealed he was in possession of cocaine.

The following items were also found inside the business planner: two books of personalized checks in the name of Saundrah Ross; Don Ross's JC Penney and Saks Fifth Avenue credit cards; one personalized checkbook in the name of Charles Staley of Denver, Colorado; a birth certificate for Willie Walker; ownership papers for Saundrah Ross's Corvette; receipts with the names of various people from La Quinta Airport Inn in Denver, Colorado; and two small plastic baggies with cocaine residue.  The name "Donald Bocast" and the Discover credit card number used at HomeBase were written together on a piece of paper inside the business planner.  The names "Charles and Scott Mooran" were also written down.

The officers discussed the situation with Johnson and, based on Johnson's statements, they proceeded to room No. 7.  The occupants were Anthony Moulden, appellant Willie Goodman, and a woman.  Appellant identified himself as "Robert Taylor."  An officer asked the occupants if anyone had any credit cards. Appellant replied, "Yes, I have credit cards," stated they were not stolen, and produced a stack of credit cards from his shirt pocket.  The stack consisted of

Ms. Ross's Shell credit card, and Unocal, Broadway, Ambassador, Montgomery Ward, JC Penney, and American Express credit cards in Don Ross's name.

The officers also found David Soto in the boarding house, and they arrested appellant, Johnson, Soto, and one of the women in Johnson's room. They also impounded the Ryder truck and examined its contents. The rear of the truck wag empty. The truck's cab contained the rest of the smaller items purchased from HomeBase that day.

The cab also contained the truck rental agreement, reflecting the truck had been rented under the name "Mooran" using the same Discover credit card number used at HomeBase. The truck cab's also contained a document with the title of "Radisson Suites Inn," which consisted of a computer printout of 30 to 50 names with numbers alongside the names; the printout identified the numbers as the guests' credit card numbers. The computer printout was found next to an envelope addressed to "Willie A. Saundrah" on Morley Street in Simi Valley. Appellant's fingerprints were found on the envelope. The cab also contained another document with a list of names and several long numbers.

The officers were initially unable to find the compressor picked up from HomeBase. On January 26, 1996, however, they received information the compressor could be found at a particular address in Bakersfield. They responded to the scene and recovered the compressor purchased from HomeBase with the Discover credit card number.

After appellant was arrested, Saundrah Ross received a telephone call from the bank informing her that some checks were missing from the account she had just closed, and requested her to contact the Bakersfield Police Department. Ms. Ross discovered her Shell credit card was missing from her wallet. Ms. Ross spoke with an officer and learned they had recovered the Corvette's pink slip and ownership documents from appellant. Ms. Ross realized she had been so disturbed about her argument with appellant that she failed to recover the documents when they reached Los Angeles.

**Trial evidence**

Appellant was charged with several felony theft offenses arising from the purchase of the HomeBase merchandise with the Discover credit card number, the possession of the Rosses' property, and the possession of the computer printout with the hotel registration and credit card numbers.

At trial Mr. Puget testified he did not initially inform the police about observing appellant at the store while Johnson and Soto picked up the merchandise. When Mr. Puget appeared at a court proceeding in February 1996, he immediately recognized appellant as the individual who was speaking to Soto in the store while Johnson loaded the compressor.

Ms. Ross testified she did not authorize anyone to remove Don Ross's credit cards, from her house. She did not authorize anyone to remove her Shell credit card from her purse. She identified the gray business planner recovered from the boarding house as the item she had allowed appellant to use. She examined the business planner and identified appellant's writing in it. Appellant had written several numbers, along with the name "Donald Bocast" and an address. Ms. Ross testified she had no resentment toward appellant and thought he was a nice person, and was never terrified of him. She considered her pink slip and credit cards only to have been missing rather than stolen.

Detective Burton Barrett interviewed Ms. Ross following appellant's arrest.  According to Detective Barrett, Ms. Ross stated that she could not get rid of appellant once he moved into her house. He finally agreed to leave if she gave him some money and drove him to a particular location. Ms. Ross stated she became suspicious when appellant offered to purchase the gasoline on their way to Los Angeles. After she returned home, she looked through her wallet and realized her Shell credit card was missing and immediately canceled the account. When Detective Burton told her appellant was in possession of the ownership papers for her Corvette, Ms. Ross replied that she did not give the documents to him. Detective Barrett testified that Ms. Ross stated she was terrified of appellant. Ms. Ross also stated she did not know appellant's actual name until she received a phone call from his son after he was arrested.

During the closing argument, the prosecution made an election as to the facts which applied to each charged offense. As to count I, acquisition of an access card account information without consent, the prosecutor cited appellant's acquisition of the Discover credit card account number that was subsequently used for the HomeBase transaction. As to count II, the sale, transfer, or receipt of an access card, the prosecutor cited appellant's possession of the credit card numbers on the computer printout purportedly from the Radisson Suites Inn. As to count III, the prosecutor cited Ms. Ross's Shell credit card, and all of Don Ross's credit cards recovered from appellant and the business planner.

As to count IV, petty theft with a prior conviction, the prosecutor relied on the Rosses' property found in appellant's possession, including the credit cards, her checkbooks, the pink slip to her Corvette, and the business planner. As to count V, receiving stolen property, the prosecutor noted it was an alternative charge to count IV, and specifically relied on the credit cards, the business planner, the pink slip, and the checkbooks.

As to count VI, acquisition of access card account information without consent, the prosecutor again cited appellant's possession of the credit card numbers in the Radisson Hotel computer printout.

As to count VII, use of an access card obtained in violation of section 484e, the prosecutor relied on the actual use of the Discover credit card account number for the HomeBase transaction to obtain merchandise worth $1,286.65.

As to count VIII, possession of heroin, the prosecutor cited the narcotics found inside the business planner. As to count IX, misdemeanor possession of lost property, the prosecutor cited appellant's possession of the checks in the name of Charles Staley of Denver, Colorado. Finally, as to count X, giving a false identification, the prosecutor cited appellant's identification of himself as "Robert Taylor" when he was arrested.

### III. CLAIMS/STANDARD OF REVIEW

Petitioner raises 13 claims for relief: Claims (A) through (E), inclusive, are related to an alleged illegal search and seizure; Claim (F) alleges a *Brady* violation; Claim (G) alleges a Sixth Amendment confrontational issue and insufficiency of the evidence; Claims (H), (I) and (J) allege due process violations in the giving of or failure to give jury instructions; Claims (K) and (L) allege that the sentence imposed violated the California "three-strikes" law; and Claim (M) alleges ineffective assistance of counsel.[3]  In his "Supplement to Writ of Habeas Corpus" and his "Supplement and Stay Request" Petitioner supplements Claim (K) raising a "disproportionate sentence" argument.  Of the 13 claims presented to this Court, six were presented solely in the state *habeas* proceeding, four in part in the state habeas proceedings and part on direct appeal, and three solely on direct appeal.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal on direct appeal and the California Superior Court on the state *habeas* petitions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In

---

[3]  In denominating the first six claims, Petitioner uses lower-case letters while in the last seven he uses upper-case.  The Court has elected to use upper-case for all 13 claims for consistency.

applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the intermediate Court of Appeal on the direct appeal and the California Superior Court on the petition for writ of *habeas corpus*.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  Finally, this Court may decide a petition for a writ of *habeas corpus* under § 2254 solely on the basis of federal law; it is not the province of a federal court to reexamine the decisions of state courts on questions of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see Mullaney v. Wilber*, 421 U.S. 684, 691 (1975).

Application of the AEDPA mandated standard is impeded where, as here, the state court provided no reasoned decision for all the grounds presented.  In that case, this Court has no basis other than the record for knowing whether the state court correctly identified and applied the governing legal principle.  As to those claims this Court must perform an independent review of the record to ascertain if the state court decision was objectively unreasonable. *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 981–982 (9th Cir. 2000).

## IV.  DISCUSSION

A.  *Claims (A) through (E) – Fourth Amendment Violation*.  Petitioner seeks the exclusion of evidence on various Fourth Amendment grounds: (1) an  unconsented warrantless entry into his room at a rooming house; (2) a warrantless arrest; (3) warrantless search of the rooming house and rooms one through seven; and (4) seizure of a planner and use of its contents. Respondent argues in rebuttal that Petitioner had a "full and fair hearing in the state courts," therefore federal *habeas* relief is unavailable.  Although it does not appear from the record that Petitioner raised his Fourth Amendment claims before the trial court or the appellate courts on direct appeal, Petitioner did present them to the California Supreme Court in his state *habeas* petition.

In *Stone v. Powell,* 428 U.S. 465, 494 (1976), the Supreme Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in

an unconstitutional search or seizure was introduced at his trial."[4]  The Ninth Circuit has held that "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (1996).  As Respondent correctly points out, CAL. PEN. CODE § 1538.5 provides criminal defendants with an opportunity to exclude evidence obtained in violation of the Fourth Amendment. Petitioner is not entitled to relief under Claims (A) through (E).

B.  *Claim (F) – Brady Violation*.  Petitioner complains that he was not provided copies of rough notes used by a police officer in preparing the officer's report in violation of *Brady v. Maryland*, 373 U.S. 83, 86 (1963).  It is uncontested that at trial counsel for Petitioner requested that the officer be required to produce the rough notes but the trial court denied the request.[5]  As with his Fourth Amendment claims, it does not appear from the record that Petitioner raised a

---

[4] California follows the same rule in state *habeas* proceedings.  *See e.g., In re Clark*, 21 Cal.Rptr.2d 509, 519 (Cal. 1993); *In re Sterling*, 47 Cal.Rptr. 205, 207–208 (Cal. 1965).

[5] Reporter's Transcript of Testimony and Proceedings, pp. 110–111(cross-examination of Officer Lerman).

> Q.      Which was the next day.  And you dictated it from your notes?
>
> A.      Yes.
>
> Q.      Do you still have those notes?
>
> MR. JOHNSON: Objection.  Relevance.
>
> MS. MUELLER: Your Honor, I'm entitled to look at them if they still exist.
>
> THE COURT: Counsel may approach.
>
> (A conference was held a sidebar)
>
> THE COURT: This is way too late for this discovery motion.  Does it make any difference?
>
> MS. MUELLER: Except that she just told me she had additional information that she did not put down there.
>
> THE COURT: Establish that.
>
> MS. MUELLER: I want to know if it is written someplace.
>
> THE COURT: Why?
>
> MS. MUELLER: The point is, if I didn't have any of that information to me here at this point, then I may have a motion.
>
> THE COURT: I'll sustain the objection.

*Brady* violation on direct appeal.  He did, however, raise the issue in his state court *habeas*

petitions.  The California Superior Court in denying his petition for *habeas corpus* held:

> The general rule is that habeas corpus cannot serve as a substitute for
> appeal and matters that could have been, but were not raised on appeal are not
> cognizable on habeas corpus in the absence of special circumstances warranting
> departure from that rule.  *In re Dixon* (1953) 41 Cal.2d 756, 757; *In re Walker*
> (1974) 10 Cal.3d 764, 773.  The issues of the warrantless search, warrantless
> seizure of property, warrantless arrest, failure to give Miranda warnings,
> suppression of favorable evidence, erroneous Jury Instructions, and imposition of
> an unauthorized sentence under PC § 667(e) could have been raised on appeal.
> Petitioner has failed to present any facts or documentary evidence that there are
> special circumstances to warrant consideration of them now.

A petitioner who has defaulted on his claims in state court is barred from raising them in

federal court so long as the default is "pursuant to an independent and adequate state procedural

rule." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  The denial by the California Superior

Court on the basis of *Dixon*, if properly applied, is an adequate independent state ground

precluding further review in a federal court.  *See Bennett v. Mueller*, 372 F.3d 573, 582–583 (9th

Cir. 2003).  *Brady* violations are ordinarily cognizable in habeas proceedings in the California

courts. *See In re Seaton*, 17 Cal.Rptr.3d 633, 638 (Cal. 2004).  The *Seaton* Court explained the

underlying rationale:

> Nor is a defendant without recourse when crucial evidence establishing
> the violation does not come to light until after the trial. A defendant is under no
> duty to object at trial if the defendant does not know, and could not reasonably
> discover, the facts supporting the objection. If, for example, the prosecution fails
> to disclose to the defense any material exculpatory evidence (see *Brady v.
> Maryland* (1963) 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215), the defense may
> not learn of the undisclosed evidence until long after the trial has been completed.
> Therefore, when a claim depends substantially on facts that the defense was
> unaware of and could not reasonably have known at trial, a failure to object at
> trial will not bar consideration of the claim in a habeas corpus proceeding.

*Id*.

In the case at bar Petitioner knew at trial that the field notes existed, requested they be

produced, which request was denied.  Petitioner's failure to pursue the issue on appeal, which he

was clearly entitled to do, would, therefore, ordinarily bar consideration of the *Brady* claim by

this Court under *Dixon* and *Bennett*.  However, the California Superior Court also stated, in rejecting Petitioner's ineffective assistance of counsel claim:

> Additionally, Petitioner has failed [to] present any facts or documentary evidence to show, nor can he show, that had his counsel obtained the notes (1) that the notes contained information favorable to Petitioner, (2) that the notes would have been admitted into evidence, (3) that the jury would have determined that the notes were favorable to Petitioner, and (4) the jury would have rendered a verdict more favorable to Petitioner.

Since the record before the Court does not show that the field notes in question were ever reviewed by either the trial court or the Superior Court on the *habeas* proceedings, this Court is troubled by the lack of any factual basis for the rulings.  Unless the field notes themselves are reviewed it is impossible to tell if there was in fact a *Brady* violation.  Accordingly, in perhaps an overabundance of caution, this Court ordered expansion of the record under RULES – SECTION 2254 CASES 7(a) to produce the field notes or an affidavit explaining the reason they are not available, including the circumstances of their destruction.  Respondent has produced those notes.  The Court, having reviewed the field notes, finds no exculpatory materials in those notes.  Petitioner is not entitled to relief under Claim (F).

C.  *Claim (G) – Sixth Amendment Confrontational Claim/Insufficiency of the Evidence*.  Here Petitioner has made somewhat of a hybrid claim.  First he claims he was denied the opportunity to confront the persons who made the statements to the police officers that resulted in his arrest and the seizure of the evidence.  Petitioner cites no authority that an accused is entitled to confront the witnesses who provide information to the police on which an arrest or search is based and independent research by the Court has not discovered any such authority, let alone a decision by the Supreme Court.  Petitioner is, however, entitled to confront witnesses whose testimonial statements are used at trial. *Crawford v. Washington*, 541 U.S. 36, 61–63 (2004).  Petitioner does not cite any hearsay statements that were admitted for the purpose of establishing that Petitioner committed the crime.  The statements Petitioner complains of were addressed to the identification of the physical evidence introduced; Petitioner's argument being

that the evidence should not have been admitted.  *Crawford* does not mandate such a holding; it is in reality a Fourth Amendment argument that is improper in the context of collateral relief.[6]

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original).  This Court must, therefore, determine whether the California Court of Appeal unreasonably applied *Jackson* in upholding Petitioner's conviction in this case.  The California Court of Appeal, applying the standard required by *Jackson*, affirmed the verdict stating:

> Appellant contends there is insufficient evidence to prove he possessed the Discover credit card number without the consent of the cardholder or issuer, as required by section 484e, subdivision (e). Appellant asserts the prosecution failed to rebut the alleged presumption that he possessed the card number with permission, and the evidence only raised a mere suspicion of the lack of consent. Appellant's argument ignores the context in which the Discover credit card number was used. An individual purporting to be "Donald Bocast" of "Borax Construction" called HomeBase and ordered several items for his alleged work crew. The individual was hesitant to give an address for his alleged contracting business, and finally gave a Simi Valley address and a Bakersfield phone number. The investigating officers did not locate "Donald Bocast" or a work crew from "Borax Construction." Instead, they discovered the phone number belonged to the boarding house where appellant and his associates were arrested. The HomeBase merchandise and narcotics were found in their rooms. The gray business planner which, appellant refused to return to Ms. Ross was also recovered from the boarding house. It contained appellant's writing with the name "Donald Bocast" and the Discover credit card number. The surrounding circumstances raise far more than a mere suspicion that appellant possessed the Discover credit card number without consent of the cardholder or the issuer.
>
> Appellant also asserts there is no evidence the Discover credit card number was valid, and raises the same foundational objections as addressed regarding the Radisson computer printout. In contrast to the printout, however, the prosecution presented competent foundational evidence to establish the validity of the Discover credit card number.  Mr. Puget, the sales manager at HomeBase, testified concerning his conversation with "Mr. Bocast" and the

---

[6] As a result of this ruling, the Court need not address the issue of whether *Crawford* applies retroactively on collateral review.  *See Bockting v. Bayer*, 399 F.3d 1010 (9th Cir. 2005), *cert. granted sub nom. Wharton v. Bockting*, 126 S.Ct. 2017 (2006) (mem.).

information he obtained about the purchase.  Mr. Puget testified he recorded the Discover credit card number given by "Mr. Bocast," and ran the number with the company to determine if it was valid. Mr. Puget testified the company verified the credit card number was valid, and he charged the transaction to that number. The prosecution introduced the sales and credit card slips prepared by Mr. Puget, and his testimony satisfied the foundational concerns discussed above. The sales slip contains the Discover credit card number, with the notation that the transaction was authorized and approved.  Mr. Puget's testimony thus established the Discover credit card number was valid when it was used in the fraudulent transaction at HomeBase.

Appellant's convictions in counts I and VII based on the Discover credit card account information are supported by substantial evidence.

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the prisoner's case; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  *Lockyer*, 538 U.S. at 75, citing *Williams v. Taylor,* 529 U.S. at 413.  Petitioner is not entitled to relief under Claim (G).

D.  *Claim (H) – Improper Jury Instructions*.  Petitioner claims three instructions given to the jury were improper: CALJIC 2.50 ("Evidence of Other Crimes"), 2.50.1 ("Evidence of Other Crimes Proved by a Preponderance of the Evidence") and 14.40 ("Petty Theft for Prior Conviction Not Admitted").  In his Petition for Review before the California Supreme Court on direct appeal, Petitioner challenged the giving of CALJIC 17.42 and an error in not modifying CALJIC 1.01 to include a jury nullification instruction; he did not challenge the giving of the instructions in CALJIC 2.50, 2.50.1, and 14.40.  In his state *habeas* petitions Petitioner did challenge CALJIC 2.50, 2.50.1, and 14.40.  The California Superior Court denied that challenge on the grounds that the issue of erroneous jury instructions could have been raised on appeal and, in the absence of special circumstances were not the proper subject of a *habeas corpus* petition, citing two California Supreme Court decisions: *In re Dixon*, 41 Cal.2d 756, 759 (1953) and *In re Walker*, 10 Cal.3d 764, 773 (1964).

MEMORANDUM DECISION
*Goodman v. Ayers*, Case No. 1:00-cv-05296-JKS-HC                14

A petitioner who has defaulted on his claims in state court is barred from raising them in federal court so long as the default is "pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson, supra.*  The denial by the California Superior Court on the basis of *Dixon* is an adequate independent state ground precluding further review in a federal court.  *See Bennett v. Mueller, supra.*  Moreover, even if this Court were to reach the merits of Petitioner's CALJIC 2.50 and 2.50.1 arguments, they have been considered by the Ninth Circuit and rejected. *Gibson v. Ortiz*, 387 F.3d 812, 821–822 (9th Cir. 2004) (CALJIC 2.50.1); *Featherstone v. Estelle*, 948 F.2d 1497, 1502 (9th Cir. 1991) (CALJIC 2.50); *see also Estelle v. McGuire*, 502 U.S. at 71–72.  Petitioner's argument on the giving of CALJIC 14.40 is either based upon state law, which this Court is precluded from reviewing further, or, to the extent it is raises due process arguments, is foreclosed for the same reasons given by the Ninth Circuit in *Gibson*. Petitioner is not entitled to relief under Claim (H).

E.  *Claims (I) and (J) – Failure to Properly Instruct the Jury*.  Petitioner claims that the court should have given two jury instructions *sua sponte*: (1) CALJIC 17.01 ("unanimity instruction") and (2) on the lesser included misdemeanor offenses of CAL. PEN. CODE § 484e, subd. (a) and (b).  Those issues were raised before and addressed by the California Court of Appeal on the direct appeal.[7]  These were raised again in the state *habeas* proceeding and, as noted above, the California Superior Court denied relief on the basis that the issue could have been raised on direct appeal.

Petitioner faces a very high hurdle to overcome.  The only question for this Court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. at 72.  It must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some constitutional right.  It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.*  "The burden of demonstrating that an erroneous instruction was so prejudicial

---

[7] Although they were not raised by Petitioner in his petition for further review of the Court of Appeal decision by the California Supreme Court, these claims are nonetheless exhausted and the Court must consider them.  *See Keyy v. Small*, 315 F.3d 1063, 1066–1067 (9th Cir. 2003).

that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  Because this case involves the failure to give an instruction not the giving of an erroneous instruction, Petitioner's burden is even heavier. *Id.,* at 155.

In addressing the lesser included offenses issue, the California Court of Appeal held:

> Appellant asserts his felony grand theft convictions in counts I and III, based respectively on the Discover credit card number and the Rosses' credit cards, must also be reversed, because the trial court failed to instruct the jury on the lesser included offenses of misdemeanor petty theft involving access card account information.

> A lesser included offense is one that is necessarily committed when another, greater offense is committed: the greater offense cannot be committed without necessarily committing the lesser offense. (*People v. Butler* (1996) 43 Cal.App.4th 1224, 1225; *People v. Tinajero* (1993) 19 Cal.App.4th 1541, 1547; *People v. Russell* (1996) 45 Cal.App.4th 1083, 1088.) A lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense or the facts actually alleged in the accusatory pleading include all the elements of the lesser offense, such that the greater cannot be committed without committing the lesser. (*People v. Birks* (1998) 19 Cal.4th 108, 117; *People v. Simons* (1996) 42 Cal.App.4th 1100, 1108.)  An offense is not a necessarily included offense if any of its elements is not an element of the charged offense, so that the purported lesser offense requires proof of some fact in addition to the facts required to establish the charged offense. (*People v. Smith* (1998) 64 Cal.App.4th 1458, 1471.)

> The trial court has a sua sponte duty to instruct the jury on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present, and there is substantial evidence that would justify a conviction of such a lesser offense. (*People v. Birks, supra*, 19 Cal.4th at p. 118; *People v. Bradford* (1997) 15 Cal.4th 1229, 1344; *People v. Barton* (1995) 12 Cal.4th 186, 194-195.) The obligation to instruct on lesser included offenses exists even when, as a matter of trial tactics, a defendant not only fails to request the instruction but expressly objects to it being given. (*People v. Birks, supra*, 19 Cal.4th at p. 127; *People v. Barton, supra*, 12 Cal.4th at pp. 196- 198; *People v. Breverman* (1998) 19 Cal.4th 142, 154-155.)

> The trial court commits error if it fails to instruct, sua sponte, on all theories of a lesser included offense which finds substantial support in the evidence. However, the court is not obliged to instruct on theories that have no such evidentiary support. (*People v. Breverman, supra*, 19 Cal.4th at p. 162.) The failure to instruct sua sponte on a lesser included offense in a noncapital case is an error of California law and such misdirection of the jury is not subject to reversal

unless an examination of the entire record establishes a reasonable probability the error affected the outcome. (*People v. Breverman, supra*, 19 Cal.4th at p. 165; *People v. Watson, supra*, 46 Cal.2d at p. 836.)

## A. Section 484e

Appellant asserts the misdemeanor offenses defined in Penal Code section 484e, subdivisions (a) and (b) are lesser included offenses of his felony convictions for violations of section 484e, subdivisions (c) and (e). We will first examine the statutory scheme of section 484e, then determine if the court had a sua sponte duty to instruct on any lesser included offenses.

Penal Code section 484e is part of a comprehensive statutory scheme contained within sections 484d through 484j, which punishes a variety of fraudulent practices involving access cards. (*People v. Butler, supra*, 43 Cal.App.4th at p. 1232.) The statutes originally addressed criminal conduct involving a "credit card." In 1986, the statutes were amended to replace "credit card" with the broader term of "access card," expand the coverage of the statutes, and address newer types of banking and credit transactions. (*People v. Butler, supra*, 43 Cal.App.4th at pp. 1235-1236.)

"Access card" is defined broadly to include "any card, plate, code, account number, or other means of account access that can be used, alone or in conjunction with another access card, to obtain money, goods, services, or any other h g of value, or that can be used to initiate a transfer of funds, other than a transfer originated solely by a paper instrument." (Pen. Code, § 484d, subd. (2).) "Although the term itself uses the word 'card,' its definition is broad in scope and covers intangible information as well as tangible objects. The term 'access card' is found in every other part of the statutory scheme, and it is unlawful activity associated with an access card that triggers criminal prosecution under the various statutes." (*People v. Butler, supra*, 43 Cal.App.4th at p. 1232.)

Section 484e defines petty and grand theft offenses involving access cards. Under section 484e, subdivisions (a) and (b), one who acquires an access card without the consent of the cardholder or issuer, or who finds a lost card and possesses the card with the intent to use, sell or transfer it, is guilty of petty theft. Under subdivision (c), one who sells, transfers, conveys or receives an access card with the intent to defraud is guilty of grand theft. "The principal but not sole distinction between section 484e, subdivisions (a) and (b), on the one hand, and section 484e, subdivision (c), on the other, is that the latter requires an intent to defraud." (*People v. Butler, supra*, 43 Cal.App.4th at p. 1233.)  Under section 484e, subdivision (e), one who acquires information pertaining to another's access card account without consent and with the intent to defraud is also guilty of grand theft.

B. **Section 484e, subdivision (c)**

In count III, appellant was charged and convicted of a violation of section 484e, subdivision (c), based on his acquisition of Don and Saundrah Ross's credit cards. This section provides:

> "(c) Every person who sells, transfers, conveys or receives an access card with the intent to defraud, or who acquires an access card with the intent to use it fraudulently, is guilty of grand theft."

Appellant first contends section 484e, subdivision (a) is a lesser included offense of subdivision (c). Subdivision (a) provides:

> "(a) Every person who acquires an access card from another without the cardholder's or issuer's consent or who, with knowledge that it has been so acquired, acquires the access card, with intent to use it or to sell it or transfer it to a person other than the issuer or the cardholder is guilty of petty theft."

One can violate section 484e, subdivision (c) without necessarily violating subdivision (a). Subdivision (a) requires "the accused acquire an access card either without the consent of the cardholder or issuer, or with the knowledge that it has been previously so acquired. No such requirement is found in section 484e, subdivision (c). Thus, if the accused were given a card by a third person who had lawfully acquired it from the holder or issuer and at the time of acquisition the accused had the intent to defraud, the accused would be in violation of section 484e, subdivision (c) but not section 484e, subdivision (a). At most, the two statutes involve related offenses," rather than lesser included offenses, and the court has no sua sponte obligation to instruct on lesser related offenses. (*People v. Butler, supra*, 43 Cal.App.4th at p. 1245.)

Appellant next contends section 484e, subdivision (b) is a lesser included offense of subdivision (c). Subdivision (b) provides:

> "(b) Every person who acquires an access card that he or she knows to have been lost, mislaid, or delivered under a mistake as to the identity or address of the cardholder, and who retains possession with intent to use it or to sell it or to transfer it to a person other than the issuer or the cardholder is guilty of petty theft."

One can also violate section 484e, subdivision (c) without violating subdivision (b). Subdivision (b) requires the accused acquire an access card that he knows to have been lost, mislaid, or rnisdelivered. No such requirement is found in subdivision (c), which simply focuses on the accused's receipt or acquisition of an access card with intent to use it fraudulently. Section 484e, subdivision (b) is not a lesser included offense of subdivision (c), and the trial court did not have a sua sponte obligation to instruct on the offense.

**C. Section 484e, subdivision (e)**

In count I, appellant was charged and convicted of felony grand theft pursuant to section 484e, subdivision (e), based on his acquisition of the Discover credit card account number subsequently used at HomeBase. This section provides:

> "(e) Every person who acquires access card account information with respect to an access card validly issued to another person, without the cardholder's or issuer's consent, with the intent to use it fraudulently is guilty of grand theft."

Appellant's assertion that section 484e, subdivision (b) is a lesser included offense of subdivision (e) is similarly without merit. As discussed above, subdivision (b) requires the accused acquire an access card that he knows to have been lost, mislaid or rnisdelivered. No such requirement is found in subdivision (e), and it can be violated without necessarily violating subdivision (b).

A closer question is whether section 484e, subdivision (a) is a lesser included offense of subdivision (e). In both offenses, the accused must accomplish the acquisition without the consent of the cardholder or issuer. However, there is a possible distinction between the subjects of the two offenses. Subdivision (a) addresses the acquisition of "an access card." Subdivision (e) addresses the acquisition of "access card account information." While the statutes seem to address two different subjects, the term "access card" is broadly defined to include a "code, account number, or other means of account access" which can be used to obtain money, goods, or services. (Pen. Code, § 484d, subd. (2).) The broad definition of "access card," the subject of subdivision (a), thus seems to be included within "access card account information," the subject of subdivision (e), and this particular element of subdivision (a) is necessarily included within the elements of subdivision (e). (See *People v. Steffens* (1998) 62 Cal.App.4th 1273, 1281, fn. 4.)

Even if section 484e, subdivision (a) is a lesser included offense of subdivision (e), the trial court's failure to give the lesser instruction as to count I, regarding appellant's acquisition of the Discover credit card account number, is not prejudicial. A trial court must instruct sua sponte on a lesser included offense only if there is substantial evidence to support a jury's determination that the defendant was in fact only guilty of the lesser offense. (*People v. Bacigalupo* (1991) 1 Cal.4th 103, 127; *People v. Butler, supra*, 43 Cal.App.4th at p. 1246.) The court is not obliged to instruct on theories that have no such evidentiary support. (*People v. Breverman, supra*, 19 Cal.4th at p. 162.) The uncontradicted evidence established appellant was part of a scheme which used the Discover credit card number to purchase merchandise from HomeBase, under the name "Donald Bocast" of "Borax Construction," for an alleged work crew. He thus had the intent to defraud and carried out that intent, which was an element of section

484e, subdivision(e) but not of subdivision (a). There was thus no substantial evidence that he was guilty only of the lesser offense, and the trial court's failure to instruct sua sponte on section 484e, subdivision (a) as a lesser included offense of subdivision (e) is not prejudicial. (*People v. Butler, supra*, 43 Cal.App.4th at p. 1246.)

The misdemeanor petty theft offenses of section 484e, subdivisions (a) and (b) are not lesser included offenses of the felony grand theft offense defined in section 484e, subdivision (c), and the court did not have any sua sponte duty to so instruct as to count III regarding appellant's acquisition of Don and Saundrah Ross's credit cards. Similarly, section 484e, subdivision (b) is not a lesser included offense of section 484e, subdivision (e). While section 484e, subdivision (a) may be a lesser included offense of subdivision (e), the court's failure to so instruct regarding count I, appellant's acquisition of the Discover credit card number, is not prejudicial. The uncontradicted evidence established appellant used the Discover credit card and thus had the intent to defraud, which is not an element of subdivision (a), and there was no substantial evidence that he was guilty only of the lesser offense.

In rejecting Petitioner's argument on the necessity for the CALJIC 17.01 (unanimity instruction) issue, the California Court of Appeal held:

Appellant contends the trial court had a sua sponte duty to instruct the jury pursuant to CALJIC No. 17.01, the unanimity instruction, because the jury could have disagreed as to which acts applied to the multiple counts alleged in the information.

It is fundamental that a criminal conviction requires a unanimous jury verdict. (*People v. Jones* (1990) 51 Cal.3d 294, 321; *People* v. *Davis* (1992) 8 Cal.App.4th 28, 33; *People* v. *Thompson* (1995) 36 Cal.App.4th 843, 850.) The jurors must unanimously agree the defendant is criminally responsible for *"one discrete criminal event." (People* v. *Davis, supra,* 8 Cal.App.4th at p. 41.) Essentially, an "either/or" rule has evolved: "[W]hen the accusatory pleading charges a single criminal act and the evidence shows more than one such unlawful act, either the prosecution must select the specific act relied upon to prove the charge or the jury must be instructed an the words of CALJIC No. 17.01 or 4.71.5 or their equivalent that it must unanimously agree beyond a reasonable doubt that defendant committed the same specific criminal act." (*People v. Gordon* (1985) 165 Cal.App.3d 839, 853, fn. omitted; *People v. Thompson, supra*, 36 Cal.App.4th at p. 850; People v. Gear (1993) 19 Cal.App.4th 86, 90.), fn. omitted.

As discussed in the factual statement, *supra*, appellant was charged with multiple felony theft offenses but the prosecutor clearly made an election as to each count in closing argument. As to count I, felony acquisition of an access card

without consent, the prosecutor cited appellant's acquisition of the Discover credit card account number that was subsequently used for the HomeBase transaction.

As to count II, the sale, transfer, or receipt of an access card, the prosecutor cited appellant's possession of the credit card numbers on the computer printout purportedly from the Radisson. As discussed in part I, *supra*, this document was improperly admitted and we have reversed his conviction in count II. Nevertheless, the prosecutor clearly indicated which evidence applied to count II.

As to count III, felony acquisition of an access card without consent, the prosecutor cited Ms. Ross's Shell credit card, and all of Don Ross's credit cards recovered from appellant and found in the business planner. In discussing count III, the prosecutor noted that appellant was also in possession of Ms. Ross's checkbooks, and asked the jury to consider his intent in such possession "with respect to his acquisition of the credit cards."

As to count IV, petty theft with a prior conviction, the prosecutor relied on all of the Rosses' property which was found in appellant's possession, including the credit cards, checkbooks, the pink slip to her Corvette, and the business planner. The prosecutor noted that Ms. Ross was reluctant to testify the property was stolen, but she immediately closed her checking account when she noticed the checks were missing.

As to count V, receiving stolen property, the prosecutor stated it was an alternative charge to count IV, and specifically relied on the Rosses' credit cards, the business planner, the pink slip, and the checkbooks. "If you are not satisfied that those items I just named were the subject matter of a theft by [appellant], you may nevertheless find that he was in possession of those items knowing that they were stolen." As discussed in part V, *supra,* we have reversed appellant's conviction in count V for receiving stolen property, given his conviction in count IV for petty theft with a prior conviction, based on the same property.

As to count VI, acquisition of access card account information without consent, the prosecutor again cited appellant's possession of the credit card numbers in the Radisson computer printout. We have also reversed appellant's conviction in count VI given the inadmissibility of the computer printout.

As to count VII, use of an access card obtained in violation of section 484e, the prosecutor relied on the actual use of the Discover credit card account number for the HomeBase transaction to obtain merchandise worth $1,286.65, and argued, "This is distinguished from the earlier count which charged the possession of that account information for a fraudulent purpose. This charges the actual use of the information to acquire property."

As to count VIII, possession of heroin, the prosecutor cited the narcotics found inside the business planner. The jury was unable to reach a verdict on this count and a mistrial was declared.

As to count IX, misdemeanor possession of lost property, the prosecutor cited appellant's possession of the checkbooks in the name of Charles Staley of Denver, Colorado.

Finally, as to count X, giving a false identification, the prosecutor cited appellant's repeated identification of himself as "Robert Taylor" when he was arrested.

Appellant's contention that the prosecutor failed to make an election is completely without merit.

This Court can not say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Nor can this Court find that the California Court of Appeal unreasonably applied the correct legal principle to the facts of the Petitioner's case; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  *Lockyer*, 538 U.S. at 75, citing *Williams v. Taylor,* 529 U.S. at 413.  Petitioner is not entitled to relief under Claims (I) and (J).

F.  *Claims (K) and (L) – Application of California's "Three Strikes Law."*  Petitioner in his petition, as supplemented, attacks the sentence imposed on two grounds: (1) it was unauthorized under state law; and (2) constituted cruel and unusual punishment under the Eighth Amendment.  The Court agrees with Respondent that in the absence of unusual circumstances, which do not exist in the case at bar, allegations of sentencing errors under state law do not present grounds for federal *habeas corpus* relief.  *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Although Respondent acknowledged that Petitioner appeared to have raised the Eighth Amendment issue before the state court, thereby exhausting that issue, Respondent opposed both attempts by Petitioner to supplement his arguments on the basis of untimeliness and a failure to exhaust.  While there may be merit to the Respondent's exhaustion argument, this Court need not reach it.  The failure to exhaust notwithstanding, this Court may *deny* a claim on the merits when

it is clear that the petition does not raise a colorable federal claim. 28 U.S.C. § 2254(b)(2); *Cassett v. Stewart,* 406 F.3d 614, 624 (9th Cir. 2005). Petitioner's Eighth Amendment claim totally lacks merit, having been foreclosed by *Lockyer v. Andrade*, 538 U.S. 63, 73–77 (2003) (holding that a California Court of Appeal's decision affirming petitioner's two consecutive terms of 25 years to life in prison for "third strike" conviction was not "contrary to" or an "unreasonable application" of "clearly established" gross disproportionality principle set forth by decisions of United States Supreme Court and thus did not warrant federal habeas relief).[8] Petitioner is not entitled to relief under Claim (L).

G.   *Claim (M) – Ineffective Counsel.*   Petitioner's ineffective assistance of counsel claim asserts several perceived deficiencies, specifically that trial counsel failed to: (1) interview witnesses; (2) file pre-trial motions to suppress evidence; (3) request jury instructions; (4) vigorously advocate for the notes of the investigating officer; and (5) investigate by failing to (a) check with the credit card issuer concerning the card used, (b) check with the truck rental company as to who actually rented the truck, and (c) obtain the surveillance tapes at the store where the credit card was used. The California Court Appeal addressed one of the issues: the failure to request instructions on lesser included offenses. The other issues were raised in the state *habeas* proceedings.

To demonstrate ineffective assistance of counsel, Petitioner must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Id*. Petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

---

[8] The Court's holding moots Respondent's timeliness objection. Moreover, reading the supplements liberally, as this Court must do in light of Petitioner's *pro se* status, they are probably more properly characterized as an attempt to invite the Court's attention to new authority that may impact the Court's ruling on the merits or the appropriate relief to be given if Petitioner prevailed on the merits.

The California Court of Appeal, in rejecting Petitioner's ineffective assistance of counsel claim vis-a-vis the failure to request lesser included instruction, held:

> Appellant anticipates a conclusion on our part that the petty theft offenses defined in section 484e, subdivisions (a) and (b) are not lesser included offenses of subdivisions (c) and (e). Appellant contends his trial counsel rendered ineffective assistance in failing to request the petty theft instructions as lesser related offenses of the charged grand theft crimes in count I based on the acquisition of the Discover credit card numbers and count III based on the possession of the Rosses' credit cards. [Fn. omitted.]

> In order to raise a successful claim of ineffective assistance, the defendant has the burden of showing (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's deficient representation subjected the defense to prejudice, i.e., there is a reasonable probability that but for counsel's failings the result would have been more favorable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Babbitt* (1988) 45 Cal.3d 660, 707; *People v. Cummings* (1993) 4 Cal.4tl.1 1233, 1339.) A reasonable probability is one sufficient to undermine confidence in the outcome. (*Strickland v. Washington, supra*, 466 U.S. 668, 694.)

> Where the record does not illuminate the basis for the challenged acts or omission, a claim for ineffective assistance is more appropriately made in a petition for habeas corpus. (*People v. Pope* (1979) 23 Cal.3d 412, 425.) In some cases, the appellate record sheds no light on why counsel acted or failed to act in the manner challenged. In such circumstances, unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, these cases are affirmed on appeal. (*People v. Lewis* (1990) 50 Cal.3d 262, 288.) Generally, the failure to make objections is a matter of trial tactics which the reviewing court will not second-guess. (*People v. Lanphear* (1980) 26 Cal.3d 8 14, 828.)

> An offense is a lesser related offense to that charged if three criteria are met. First, there must be some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged. Second, the offense must be one closely related to that charged and shown by the evidence. Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. (*People v. Simons, supra*, 42 Cal.App.4th 1100, 1110-1111; *People v. Russell, supra*, 45 Cal.App.4th 1083, 1090-1091.) Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense. (*People v. Simons, supra*, 42 Cal.App.4th at p. 1111.)

As discussed in part III, *supra*, the misdemeanor petty theft offenses defined in section 484e, subdivisions (a) and (b) are not necessarily included offenses to the felony grand theft offenses defined in section 484e, subdivision (c) and, with one possible exception, subdivision (e). The petty theft offenses, however, are closely related to the felony grand theft offenses based on the unlawful acquisition of access cards. Appellant's trial counsel did not request instructions on the misdemeanor petty theft offenses, and the record supplies the reason for this decision. As to the charges based on the acquisition and use of the Discover credit card number at HomeBase, appellant's defense focused on Gary Johnson as the actual culprit. In closing argument, counsel noted the individual who called HomeBase identified Johnson as the individual who would pick up the merchandise, and that Johnson appeared at the store and presented identification. Counsel attacked Mr. Puget's alleged identification of appellant as one of the individuals with Johnson and Soto at the store, and pointed out that Mr. Puget did not mention appellant's alleged presence until he saw appellant at one of the court proceedings. Counsel acknowledged that "Donald Bocast's" name and the Discover card number were written inside the business planner, and that appellant retained the gray business planner when he left Ms. Ross. However, counsel argued the planner was found in Gary Johnson's room and contained narcotics, and that Johnson rather than appellant was found in possession of narcotics. Counsel asserted such evidence led to the conclusion that Johnson had control of the business planner, and that appellant was not involved in any fraudulent credit card transactions.

Based on counsel's argument regarding the Discover card number and the HomeBase transaction, instructions on the misdemeanor petty theft offenses would have been inconsistent with appellant's theory of the case. Section 484e, subdivisions (a) and (b) both require the accused acquire or retain the access cards with the intent to use, sell, or transfer it to a third person. Appellant's defense theory asserted Gary Johnson was in possession of the gray business planner and the credit card numbers inside it, Johnson accomplished the HomeBase transaction, Johnson's motive was the acquisition of narcotics, and appellant was not involved in any way.

As to count III, the acquisition of the Rosses' credit cards, counsel asserted Ms. Ross left the credit cards in the business planner, and appellant inadvertently obtained the credit cards when he left the house with the business planner. Counsel argued there was no evidence appellant intended to accomplish any transactions with the credit cards. Again, appellant's defense theory was inconsistent with the misdemeanor petty theft offenses because the petty theft offenses require the intent to use, sell, or transfer the access card to a third party. Appellant asserted he inadvertently possessed the Rosses' credit cards without any intent to use them, and only Johnson was engaged in illegal credit card

transactions. The record thus suggests a reason for counsel's failure to request lesser related instructions as to the felony grant theft charges in counts I and III.

Appellant acknowledges counsel's theory of the case but asserts counsel was ineffective for permitting the case to be submitted on an "all or nothing" basis. Appellant argues he had nothing to lose by allowing the jury to consider the petty theft offenses because he faced a maximum three strikes sentence of 161 years to life. Appellant argues that under such circumstances, no reasonable attorney would have advised his client to "'go for broke'" and hope for an absolute acquittal."

"In discussing the importance of instruction as to lesser included offenses, we previously have admonished that the jury should not be confronted with an 'all or nothing' choice when it may believe that the accused is guilty only of a lesser included offense. We have observed that, if given no opportunity to convict of the lesser offense, the jury wrongly may convict the defendant of the greater offense, even though it believes an element of that offense is missing, rather than acquit the defendant entirely. [Citations.]" (*People v. Bradford, supra,* 15 Cal.4th at p. 1345.) However, the trial court has no corresponding sua sponte duty to instruct on lesser related offenses, and the defendant's failure to request the instructions at trial waives the issue on appeal. (*People v. Majors* (1998) 18 Cal.4th 385, 408; *People v. Birks, supra,* 19 Cal.4th at pp. 136-137.) "In a case where [defendant] believes the tactical benefit of an all-or-nothing choice outweighs [the] risk, the defendant can refrain from requesting instructions on lesser related offenses." (*People v. Le* (1995) 39 Cal.App.4th 1518, 1523.) Under such circumstances, an "all-or-nothing" approach may constitute a reasonable tactical decision rather than ineffective assistance of counsel. (*People v. Majors, supra,* 18 Cal.4th at p. 409; *People v. Samayoa* (1997) 15 Cal.4th 795, 846.) In addition, the trial court is not obliged to automatically grant the defendant's request for instructions on a lesser related offense. (*See People v. Birh, supra,* 19 Cal.4th at pp. 136-137, fn. 19.)

In the instant case, appellant faced a maximum three strikes sentence of 161 years to life in prison but refused the prosecution's offer of 25 years to life. Appellant did not testify, and counsel's theory of the case clearly indicated a tactical decision to try the "all-or-nothing" approach by arguing that Gary Johnson possessed the credit card numbers with the intent to defraud, and that appellant inadvertently possessed the Rosses' credit cards. Counsel attacked the reliability of Mr. Puget's identification of appellant, and tried to link Johnson's alleged credit card transactions with the narcotics found in Johnson's room. The record thus infers a reasonable tactical decision against requesting any lesser related instructions, and counsel did not render ineffective assistance.

The decision of the California Court of Appeal was not contrary to and correctly applied clearly established Federal law.  Like the state court, this Court is not only reluctant to second

guess tactical decisions made by trial counsel but they are to be accorded substantial deference and are virtually unchallengeable, *Strickland*, 466 U.S. at 689–690; *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1243–1244 (9th Cir. 2005); accordingly, it cannot say that based on the evidence the decision of the California Court of Appeal was objectively unreasonable.

The California Superior Court in denying Petitioner's petition, citing and applying *Strickland*, held:

> Petitioner has failed to carry his burden of showing prejudice as to each charge indicated below.  As Petitioner cannot show he was prejudiced by the failure of his trial counsel to challenge the prior conviction allegations, Petitioner has failed to make a prima facie case for relief.
>
> (a) *Failed to Adequately investigate, interview witnesses*.  Petitioner has failed [to] present any facts or documentary evidence to show, nor can he show, that (1) what counsel should have investigated and what witness counsel should have interviewed, (2) that the investigation/interviews would have turned up admissible evidence or have been helpful to Petitioner in any other manner, (3) that the court would have allowed such evidence into the trial, (4) that the jury would have viewed the evidence in Petitioner's favor, and the jury would have rendered a more favorable verdict.  Petitioner's claim that he received ineffective assistance of counsel from counsel's failure to adequately investigate, interview witnesses is, therefore, an unsupported conclusory allegation which is insufficient to support the claim for relief.  *In re Swain* (1949) 34 Cal.2d 300, 303–304.  As Petitioner cannot show he was prejudiced, Petitioner has failed to make a prima facie case for relief.
>
> (b)  *Failed to prepare/request additional instructions necessary to explain all leal theories*.  Petitioner has failed [to] present any facts or documentary evidence to show, nor can he show, (1) what legal theories instructions were necessary for, (2) which instructions should have been given, (3) that the court would have allowed the instructions would [*sic*] be used, (4) that the court would not have modified the instructions, (5) that the instructions were favorable to Petitioner, and (6) that the jury would have rendered a verdict more favorable to Petitioner.  Petitioner's claim that he received ineffective assistance of counsel from counsel's failure to prepare and request all instructions to explain all legal theories is, therefore, an unsupported conclusory allegation which is insufficient to support the claim for relief.  *In re Swain* (1949) 34 Cal.2d 300, 303–304.  As Petitioner cannot show he was prejudiced, Petitioner has failed [to] make a prima facie case for relief.
>
> (c)  *Failure to vigorously advocate for the police officer's notes*.  This claim is vague and unclear as it cannot be determined if Petitioner means that his counsel failed to vigorously seek to obtain the notes or vigorously seek to get the

notes introduced into evidence. Since it cannot be determined what Petitioner is claiming his counsel failed to do, his claim is an unsupported conclusory allegation which is insufficient to support the claim for relief. *In re Swain* (1949) 34 Cal.2d 300, 303–304.

Additionally, Petitioner has failed [to] present any facts or documentary evidence to show, nor can he show, that had his counsel obtained the notes (1) the notes contained information favorable to Petitioner, (2) that the notes would have been admitted into evidence, (3) that the jury would have determined that the notes were favorable to the Petitioner, and the jury would have rendered a verdict more favorable to Petitioner. Petitioner's claim that he received ineffective assistance of counsel from counsel's failure to vigorously advocate for the police officer's notes is, therefore, an unsupported conclusory allegation which is insufficient to support the claim for relief. *In re Swain* (1949) 34 Cal.2d 300, 303–304. As Petitioner cannot show he was prejudiced, Petitioner has failed to make a prima facie case for relief.

Other than to identify the alleged alibi witness, Petitioner adds little additional factual basis in support of his ineffective counsel claim. Petitioner does not set forth what the other two who were arrested with him (Johnson and Soto) or the alleged alibi witness (Moulden) would say if interviewed and called as witnesses in the trial. But most importantly, notwithstanding that by raising ineffective counsel as a grounds for granting *habeas* relief constitutes a waiver of the attorney client privilege, *see Strickland*, 466 U.S. at 691, Petitioner provides nothing concerning his conversations with trial counsel. In particular, Petitioner does not reveal what, if anything, he told counsel regarding Johnson, Soto, and Mouldon and the testimony they may offer, or counsel's response. Petitioner's position is further undercut by the fact that he does not claim that the failure to call them as witnesses at trial was ineffective, only the failure to interview them. Petitioner has failed to establish a *prima facie* case of ineffective counsel on this basis.

Petitioner's claims regarding the jury instructions are, as noted above, without merit. The same is true of his claim regarding the failure to "vigorously advocate for release of the officer's notes." As discussed in Part IV.B., above, those notes contained no exculpatory information or any evidence that would logically tend to exonerate Petitioner. Obtaining those notes at trial could not possibly have changed the outcome.

Petitioner's factual allegation concerning the surveillance tapes is equivocal and somewhat internally inconsistent: "which could have shown that Petitioner was not at the store

or what part, if any, did petitioner play in the crime charged" and "misidentification" (referring to the testimony that Petitioner was present at HomeBase when the purchased items were picked up).

On direct examination the HomeBase sales clerk, after testifying as the two other persons he saw at the time of the transaction (Soto and Johnson), testified:[9]

> Q. Did you see that same Mr. Soto in company with any other individual?
>
> A. Yes, I did.
>
> Q. Will you look around the court room and tell the court and the jury if you see someone present today whom you saw in company with Mr. Soto on the 24th of January.
>
> A. The defendant, Mr. Goodman.
>
> THE COURT: Indicating the defendant, Mr. Goodman.
>
> Q. And do you recall specifically what portion of the store the two appeared together in?
>
> A. They were standing in our exterior drive-through lumber yard talking.
>
> Q. Is that some distance from where you were conducting business?
>
> A. Approximately 20 to 25 feet from my desk.
>
> Q. Is there any doubt in your mind that this is the same individual you saw in company with Mr. Soto?
>
> A. No.  there is no doubt in my mind.

Assuming that the surveillance tapes existed and those tapes showed Mr. Soto at all times when he was in the location described by Mr. Puget, the most they could have done is undermined the identification of Petitioner as being present at HomeBase at the time of the transaction.  Unfortunately for Petitioner, this would not have resulted in a different result. Petitioner has not argued, nor could he, that it was a necessary element of the crimes of which he was convicted for him to have been physically present at HomeBase in picking up the merchandise that was acquired by using the purloined credit card.

Since the truck rental agreement was introduced into evidence and showed that it was rented in a false name, it is unclear what an investigation might have uncovered or its potential

---

[9] Reporter's Transcript of Testimony and Proceedings, pp. 160–161.

relevance.  In addition to the fact that Petitioned neither denies renting the truck nor alleges that someone else did (in Claim (C) Petitioner claims as a basis for challenging the illegal search that it was his vehicle), of particular import is the lack of any relationship between the identity of the person who rented the truck and the crimes of which Petitioner was convicted.  As to the information on who was connected to the credit card used at HomeBase, there is no indication in the record that an investigation by Petitioner's counsel would have uncovered any helpful information—most specifically that the cards were issued to either Petitioner, Johnson, or Soto, or that the use at HomeBase was permissive or otherwise lawful.

The ineffective counsel claim that addresses the failure to timely seek to suppress the evidence allegedly unlawfully seized presents a different situation.  There is no reasoned state court decision addressing this issue.  Although, as noted above, this Court may not address the exclusion of evidence allegedly illegally seized in violation of the Fourth Amendment, contrary to the position of Respondent, the failure of counsel to raise the issue is properly before the court as part of the Sixth Amendment ineffective counsel claim. *See Kimmelman v. Morrison*, 477 U.S. 365, 374–375 (1986).  However, in order to prevail, Petitioner must "prove that his Fourth Amendment claim is meritorious that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.*

The Court undertakes a two-step process.  The first step to identify what evidence could have been suppressed and the Counts of which he was convicted based upon that evidence.  The second step is to determine if a motion to suppress would have been meritorious.  For the purpose of making this determination the Court will assume hypothetically that the Petitioner made a timely motion to suppress on the basis of Claims (A) through (E) and review the record in a light most favorable to Petitioner.

Looking first at Petitioner's Claims (A) and (B), although they are couched in Fourth Amendment terms they are both in reality charging the legality of the arrest.  Neither identify any evidence, either physical or testimonial, to be suppressed as a result of the alleged illegal arrest.  Accordingly, even if the arrest was illegal, there is no evidence to be suppressed.

Looking to Claim (C), Petitioner challenges the search of the rented truck.  However, the California Court of Appeal in reversing Petitioner's conviction on Counts II and VI held that the

evidence seized from the rental truck, the list of credit card accounts, was improperly admitted on other grounds.  Consequently, even if the search of the rental truck violated the Fourth Amendment and the evidence suppressed, the result remains the same.

Claims (D) and (E) attack the seizure of the grey, zippered business planner.  The Court first notes that even if the planner and its contents are excluded it will not impact the outcome of Petitioner's conviction on Counts I, VII, and X, which were not based on any of the evidence derived from the planner.  Thus, the threshold question is whether, assuming that Petitioner was not convicted on Counts III, IV, and IX, his sentence would be lower.  The answer is yes.  As noted above, one of the consecutive 25-year to life sentences was based on his conviction on Count IV.  Without the conviction under Count IV, Petitioner would have only one conviction that qualified under California's "Three Strikes Law," Count VII.  Thus, his sentence would be 25 years to life plus the five consecutive one-year enhancements for a total sentence of 30 years.

The facts surrounding the warrantless seizure of the grey planner are briefly recited as follows.  Officer Lisa Lerman of the Bakersfield Police Department had credible information that two males, one identified as Gary Johnson and the other an unidentified Hispanic, had obtained merchandise through the unauthorized use of a credit card.  Officer Lerman also had credible information identifying the vehicle that the two suspects were driving.  The Officer also had credible information that the two suspects might be at a boarding house located at 607 Sumner Street in Bakersfield.  Based upon that information, Officer Lerman, accompanied by another officer, proceeded to 607 Summer Street.  Upon arriving at the boarding house, the officers discovered the suspect's vehicle parked in front.

Based on an anonymous tip as to the location of the driver of the vehicle, the officers proceeded to Room 5 and knocked on the door.  The knock was responded to by Johnson who, other than an unidentified female, was the sole occupant of the room.  The officers asked if they could enter to talk to the occupants and permission was granted.  When asked to identify himself, Johnson, who matched the description given Officer Lerman of the white male suspect who had signed the credit card receipt at HomeBase, did so.  In close proximity to Johnson was a hammer bearing the same brand name as the hammer purchased at HomeBase.  Based on this, Officer

Lerman placed Johnson under arrest for violation of Cal. Pen Code § 484(g) (unauthorized possession of an access card) and gave Johnson his Miranda rights.

Also in plain sight in the vicinity of Johnson was a grey, zippered planner.  Johnson informed Officer Lerman that the card that had been used at HomeBase was in the grey planner and that the planner belonged to a person named "Willie."  Officer Lerman seized the planner, opened it and discovered the evidence relied upon to convict Petitioner on Counts III, IV, and IX.

The law is clear that where law enforcement authorities have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, the officers may seize the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present. *United States v. Place*, 462 U.S. 696, 701 (1983).  It is undisputed that the planner was in plain view.  Generally, seizures of property in "plain view" do not violate the Fourth Amendment, even if the discovery of the evidence is not inadvertent. *See Horton v. California*, 496 U.S. 128, 130–131 (1990).  That is not, however, to say that a "plain view" seizure never violates the Fourth Amendment.  To justify the warrantless seizure of property the officer must satisfy three predicates: (1) lawful presence in the place where the property is located; (2) the incriminating character of the property must be immediately apparent; and (3) a lawful right of access to the property itself. *Id.*, 496 U.S. at 136–137.  Seizure of the planner did not violate Petitioner's Fourth Amendment rights.  Officer Lerman was lawfully on the premises; the incriminating character of planner was immediately apparent to the officer as a result of Johnson's statement that it contained the credit card used at HomeBase; and the officer had lawful access to it.

Petitioner argues that even if the seizure of the planner did not violate the Fourth Amendment, when Officer Lerman opened it his Fourth Amendment rights were violated. This, in turn, resulted in the discovery of the evidence upon which his conviction on Counts III, IV, and IX were based.  While facially this point may appear to present a plausible argument, it does not withstand scrutiny.  First, the seizure and search of the planner as incident to the arrest of Johnson fell within the scope of a search incident to an arrest under the principles of *Chimel v.*

*California*, 395 U.S. 752, 763 (1969) and *New York v. Belton*, 453 U.S. 454, 460–461 (1981).
*See Thornton v. United States*, 541 U.S. 615, 620–621 (2004); *People v. Mitchell*, 42 Cal.Rptr.2d
537, 538–539 (Cal.App. 1995); *People v. Prance*, 277 Cal.Rptr. 567, 671–572 (Cal.App. 1991).

Second, Petitioner has standing to seek exclusion of evidence only if his own Fourth
Amendment rights have in fact been violated. *United States v. Salvucci*, 448 U.S. 83, 85 (1980);
*see Rakas v. Illinois*, 439 U.S. 128, 133–134 (1978); *In re Lance W.*, 210 Cal.Rptr. 631, 636–637
(Cal. 1985) (establishing the same rule under California law). Consequently, before Petitioner
could have expected to prevail on a suppression motion under Cal. Pen. Code § 1538.5, *his*
Fourth Amendment rights must have been violated by the opening of the planner by Officer
Lerman. A person aggrieved by an illegal search or seizure of the property of another has not
had any of his Fourth Amendment rights infringed. *Rakas*, 439 U.S. at 134. The problem that
Petitioner would have faced was that he was neither the lawful owner nor, to the extent he had
possession of the planner,[10] did he have lawful possession. *Salvucci* made crystal clear that
while ownership and/or lawful possession confer standing, illegal possession does not. *See also
Rawlings v. Kentucky,* 448 U.S. 98, 105–106 (1980); *Brown v. United States*, 411 U.S. 223,
229–230 (1973). *Lance* makes clear that California follows the same rule. Thus, Petitioner
lacked standing to challenge the "search" of the grey, zippered planner.

This Court can not say that the decisions of the California courts in denying Petitioner's
petitions for habeas relief were "contrary to, or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court of the United States" or were
"based on an unreasonable determination of the facts in light of the evidence presented in the
State court proceeding." 28 U.S.C. § 2254(d). Nor can this Court find that the California courts
unreasonably applied the correct legal principle to the facts of the Petitioner's case; *i.e.*, the state
court decision was more than incorrect or erroneous, its application of clearly established law
was objectively unreasonable. *Lockyer*, 538 U.S. at 75, citing *Williams v. Taylor,* 529 U.S. at
413. Petitioner is not entitled to relief under Claim (M).

---

[10] The planner was seized from a room that was neither occupied by Petitioner nor an area subject
to his dominion and control. Under these facts it is difficult, if at all possible, to find that at the time of
seizure the planner was even in Petitioner's constructive possession.

## V.  CONCLUSION

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (internal quotation marks omitted)).  All issues raised in the petition were addressed by the California Court of Appeal in its decision or, to the extent they were properly raised in the California *habeas corpus* proceedings, by the California Superior Court and no reasonable jurist could find that those decisions were "objectively unreasonable."

Dated at Anchorage, Alaska this 20th day of June, 2006.

_____s/ James K. Singleton, Jr._____
JAMES K. SINGLETON, JR.
United States District Judge
